IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Ronald D. Conte,** | Case No. 1:21-cv-1913 |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| **John White, et al.,** | MEMORANDUM OPINION AND |
| Defendants. | ORDER |

This matter is before the Court upon the Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) of Defendants John White ("White") and Lori Beasley ("Beasley") (together, "Defendants") filed on November 2, 2022 ("Defendants' Motion"). (Doc. No. 16.) On November 16, 2022, Plaintiff Ronald D. Conte ("Plaintiff") filed a Response to Defendants' Motion ("Plaintiff's Response") (Doc. No. 17), to which Defendants replied on November 28, 2022 ("Defendants' Reply") (Doc. No. 18).

For the reasons set forth herein, Defendants' Motion is GRANTED.[1]

I. **Background**

A. **Factual Allegations**

Plaintiff's Amended Complaint sets forth the following allegations. At all relevant times, Plaintiff was a prisoner of the State of Ohio in the custody of the Ohio Department of Rehabilitation and Corrections confined at the Richland Correctional Institution. (Doc. No. 8, ¶ 4.) Defendant

---

[1] In Defendants' Reply, Defendants clarify that their Motion is, in fact, only a Motion for Partial Judgment on the Pleadings. (Doc. No. 18 at 1.) The Court is thus only dismissing certain claims of Plaintiff's Amended Complaint—Plaintiff's claims against Defendants in their official capacities and Plaintiff's state law claims.

White, Defendant Beasley, and Defendant John Doe were all Correctional Officers employed at the Richland Correctional Institution. (*Id.* at ¶¶ 5-7.)

On or about August 15, 2019, Plaintiff was issued a Medication Pass, which allowed him to be released daily from his pod after the lunch count was taken so that he could receive certain medications designated to be dispensed at 11:30 a.m. (*Id.* at ¶ 9.) From August 15, 2019 to October 7, 2019, "Plaintiff encountered no issues with regularly assigned correction officers honoring the pass and he received his medication as scheduled." (*Id.* at ¶ 10.) On October 8, 2019, after the lunch count had been conducted, while waiting in the sallyport with several other inmates with passes, Plaintiff was "challenged" by Beasley as to what Plaintiff was doing. (*Id.* at ¶ 11.) Beasley was not a regularly assigned guard for the area and "singled out Plaintiff to challenge." (*Id.* at ¶ 12.) Plaintiff showed Beasley his Medication Pass and explained that he had been using it in the same manner for the last two months. (*Id.* at ¶ 13.)

Beasley then "using extreme obscene language[,] snatched the pass from Plaintiff's hand and started waving it in front of his face." (*Id.* at ¶ 13.[2]) Beasley "ordered Plaintiff out of the sallyport indicating that she did not care what Plaintiff had been doing before, that he was not going to do it that day." (*Id.* at ¶ 13.) Plaintiff raised his voice, "but he immediately complied with Beasley's orders," and did not make physical contact with Beasley "or attempt in any manner to strike her." (*Id.* at ¶ 14.) When plaintiff was out of the sallyport, White was present and ordered Plaintiff to put his hands behind his back to be handcuffed, "despite the fact Plaintiff had offered no physical

---

[2] This is the second paragraph numbered 13.

2

resistance." (*Id.* at ¶ 16.) "Plaintiff immediately complied with no attempt at any resistance." (*Id.* at ¶ 17.)

Once Plaintiff was handcuffed, he was led out of the dorm, and White "intentionally slammed Plaintiff into the exit door frame and Plaintiff fell to the ground going unconscious." (*Id.* at ¶ 18.) This was witnessed by several inmates. (*Id.* at ¶ 19.) "White then intentionally fell or jumped with his full body weight on top of Plaintiff." (*Id.* at ¶ 20.) Plaintiff was still unconscious, but White "attempted to lift Plaintiff by yanking on the handcuffs" behind Plaintiff's back. (*Id.* at ¶ 21.) "When Plaintiff regained consciousness, he immediately realized that he had been seriously injured and informed the staff of [that] fact and of the fact that he was in great pain." (*Id.* at ¶ 22.) White continued to order Plaintiff to stand but he was not able to do so because of his injury, "which was later determined to be a fracture of the femur just below the hip ball, which ultimately required surgery and has resulted in permanent injury." (*Id.* at ¶ 23.) Plaintiff had suffered a concussion from his head striking the door frame. (*Id.* at ¶ 24.) Plaintiff was also disoriented and in severe pain in his arms and shoulder from the yanking on his handcuffs. (*Id.*) White again grabbed Plaintiff by his handcuffs and "yanked Plaintiff's arms up behind his head inflicting great pain." (*Id.* at ¶ 26.) "Plaintiff was still unable to stand and continued to complain of the extreme pain he was in." (*Id.* at ¶ 27.)

Then, a "small cart known as a 'mini-ambulance' arrived," but Plaintiff instead was placed in a wheelchair. (*Id.* at ¶ 28.) Despite multiple staff being on scene, including Beasley and White, they "offered no assistance and ordered inmates with no medical training to lift Plaintiff" into the wheelchair, "thus exacerbating his injury." (*Id.* at ¶ 29.) Plaintiff was taken by wheelchair to the prison infirmary located over 300 yards away. (*Id.* at ¶ 28.) Once in the infirmary, X-rays were

taken. (*Id.* at ¶ 30.)  Then, rather than being left in the medical ward or immediately transported "for proper medical care," Plaintiff was placed in isolation, "which is used for disciplinary purposes" by Defendants Beasley, White, or John Doe Correction Officer No. 1.  (*Id.*)  Plaintiff remained in isolation for an hour before being transported to a hospital in Columbus "for proper treatment."  (*Id.* at ¶ 31.)  Plaintiff was treated at the hospital for four days and underwent surgery for his fracture. (*Id.* at ¶ 32.)  "Plaintiff is permanently disabled from the injury he received."  (*Id.* at ¶ 33.)  After Plaintiff was released from the hospital, he "was transported to the Department of Corrections Franklin Medical Center for further treatment."  (*Id.* at ¶ 34.)  Once there, however, "Plaintiff was immediately removed from the pain medication that [he] had been prescribed at [the hospital] and was given nothing stronger than Tylenol for pain."  (*Id.* at ¶ 35.)

### B. Procedural History

On October 8, 2021, Plaintiff filed a Complaint in this Court.  (Doc. No. 1.)  On January 24, 2022, Defendants filed a Motion to Dismiss for failure to state a claim.  (Doc. No. 7.)  Plaintiff then filed an Amended Complaint alleging the following causes of action against Defendant Beasley, Defendant White, and Defendant John Doe Correction Officer No. 1, in both their individual and official capacities: (1) Excessive Use of Force in violation of the Eighth Amendment, against White (Count I); (2) Excessive Use of Force in violation of the Eighth Amendment, against White (Count II); (3) Failure to Provide Adequate Medical Care in violation of the Eighth Amendment, against Beasley (Count III); (4) Failure to Provide Adequate Medical Care in violation of the Eighth Amendment, against White and Beasley (Count IV); (5) Failure to Provide Adequate Medical Care in violation of the Eighth Amendment, against all Defendants (Count V); (6) State Tort Claim/Battery, against White (Count VI); (7) Violation of Ohio Administrative Code 5120-9-01, Use

4

of Force, against White (Count VII).  (Doc. No. 8.)  In light of Plaintiff's Amended Complaint, Defendants' Motion to Dismiss was rendered moot. (Feb. 15, 2022 non-doc. Order.)  On February 28, 2022, Defendants Beasley and White filed an Answer.  (Doc. No. 9.)

On November 2, 2022, Defendants Beasley and White filed the instant Motion for Judgment on the Pleadings.  (Doc. No. 16.)  On November 16, 2022, Plaintiff filed a Response to Defendants' Motion (Doc. No. 17), and on November 28, 2022, Defendants filed a Reply in support of their Motion (Doc. No. 18).  In Defendants' Reply, Defendants clarify that their Motion is, in fact, only a Motion for Partial Judgment on the Pleadings.  (*Id.* at 1.)  Defendants' Motion is ripe for decision.

## II.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).

The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings.  *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011).  In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a

5

speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

In ruling on a Rule 12(b)(6) or 12(c) motion, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits

6

attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430; *see also Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 694 (6th Cir. 2018).

### III. Analysis

#### A. State Law Claims

In Plaintiff's Response, Plaintiff states that he does not oppose the dismissal of his state law claims. (Doc. No. 17 at 2.) Specifically, Plaintiff does not oppose dismissal of his claim for State Tort Claim/Battery (Count VI) and his claim for Violation of Ohio Administrative Code 5120-9-01 (Count VII). (*Id.*) The Court therefore dismisses Plaintiff's state law claims—Counts VI and VII.

#### B. Sovereign Immunity

Defendants argue that Plaintiff's claims against Defendants in their official capacities are barred under the Eleventh Amendment. (Doc. No. 16 at 4-7.) Specifically, Defendants assert that "a suit against a state official in his or her official capacity is deemed a suit against the official's office," and thus, "a suit against a state official in his or her official capacity is no different from a suit against the state itself," and is barred by the Eleventh Amendment. (*Id.* at 5.) Because Defendants are "indisputably employees for an agency of the State of Ohio," Defendants argue the claims against them in their official capacities are barred. (*Id.* at 7.) Plaintiff's Response is silent as to sovereign immunity. (*See* Doc. No. 17.)

By not opposing Defendants' arguments regarding sovereign immunity, Plaintiff has waived any opposition thereto. *See Humphrey v. U.S. Attorney Gen.'s Off.*, 279 F. App'x 328, 331 (6th Cir. 2008) (finding that a plaintiff's failure to oppose arguments raised in the defendants' motion to dismiss is grounds for the district court to assume that opposition to the motion is waived); *Scott v.*

7

*State of Tenn.*, 1989 WL 72470, at *2 (6th Cir. 1989) (noting that "if a plaintiff fails to respond or to otherwise oppose a defendant's motion [to dismiss], then the district court may deem the plaintiff to have waived opposition to the motion"); *see also Selou v. Integrity Sol. Servs., Inc.*, 2016 WL 612756, at * 3 (E.D. Mich. Feb. 16, 2016) ("Plaintiff's failure to address any claim but her TCPA claim in response to LiveVox's motion to dismiss is cause for dismissing those claims."); *Ullmo v. Ohio Turnpike*, 126 F. Supp. 3d 910, 919 (N.D. Ohio 2015) (finding that the plaintiff abandoned claim where he failed to respond to defendant's motion to dismiss); *Dykema Excavators, Inc. v. Blue Cross of Blue Shield of Mich.*, 77 F. Supp. 3d 646, 659 (E.D. Mich. 2015) ("[T]hese claims are subject to dismissal because the plaintiffs do not address or even mention them in their response to the motion to dismiss, and it appears that they therefore have abandoned them and now intend to make no effort to proceed upon them.") Thus, Plaintiff's failure to oppose Defendants' argument that Plaintiff's claims against Defendants in their official capacities are barred under the Eleventh Amendment constitutes sufficient cause to dismiss Plaintiff's claims against Defendants in their official capacities. Nonetheless, the Court will address the substance of Defendants' argument.

Eleventh Amendment sovereign immunity "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments by citizens of another state, foreigners or its own citizens." *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993). It also extends to "suit[s] against state officials when 'the state is the real, substantial party in interest.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-101 (1984) (citation omitted). As the United States Supreme Court has explained, a suit against a State, a state agency or its department, or a state official is in fact a suit against the State and is barred "regardless of the

nature of the relief sought." *Id*. at 100-02. The Eleventh Amendment "also bars suits for monetary relief against state officials sued in their official capacity." *Thiokol Corp.*, 987 F.2d at 381.

The Court concludes that all of Plaintiff's official-capacity claims against Defendants are barred under the Eleventh Amendment. In *Smith v. DeWine*, the plaintiffs brought Section 1983 claims against the Governor of Ohio and the Ohio Department of Rehabilitation and Correction's Director in their official capacities. *Smith v. DeWine*, 476 F. Supp. 3d 635, 642 (S.D. Ohio 2020). The district court concluded that Eleventh Amendment immunity extended to those state officials sued in their official capacities. *Id.* at 650. Likewise, here, Plaintiff brought claims against Defendants in their official capacities as state employees. Thus, the Court concludes that Eleventh Amendment immunity extends to these state officials in their official capacities. *See id.* at 650; *see also Heike v. Guevara*, 654 F. Supp. 2d 658, 671 (E.D. Mich. 2009).

While there are three well-established exceptions to Eleventh Amendment immunity: (1) congressional abrogation; (2) waiver by the State; and (3) "a suit against a state official seeking prospective injunctive relief to end a continuing violation of federal law," *Carten v. Kent State Univ.*, 282 F.3d 391, 398 (6th Cir. 2002), Plaintiff has not argued or demonstrated that an exception to immunity applies. Therefore, the Eleventh Amendment bars Plaintiff's official-capacity claims against Defendants. Accordingly, Plaintiff's claims against Defendants in their official capacities are dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.[3]

---

[3] As clarified in Defendants' Reply, "Defendants do not request judgment as to Plaintiff's 1983 claims alleged against Defendants in their individual capacit[ies], as those claims should proceed." Thus, Plaintiff's claims against Defendants White and Beasley in their individual capacities will proceed.

### C. Defendant John Doe Correction Officer No. 1

While not addressed in Defendants' Motion, the Court *sua sponte* concludes that Plaintiff's claims against Defendant John Doe Correction Officer No. 1 are time barred. Plaintiff's claims against Defendant John Doe Correction Officer No. 1 are brought pursuant to 42 U.S.C. § 1983. In *Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989), the Sixth Circuit held that the "limitations period for § 1983 actions arising in Ohio is the two-year period in Ohio Revised Code ("O.R.C.") § 2305.10." *Id.* Since *Browning*, it is well-settled that, in Ohio, O.R.C. § 2305.10 is the appropriate statute of limitations in § 1983 cases. *See also LRL Properties v. Portage Metro Housing Auth.,* 55 F.3d 1097, 1105 (6th Cir. 1995); *Williams v. Schismenos,* 258 F. Supp. 3d 842, 853 (N.D. Ohio 2017) ("In Ohio, the statute of limitations for § 1983 actions is contained in Ohio Rev. Code § 2305.10, which requires that actions for bodily injury be filed within two years after their accrual.").

The question of when the statute of limitations begins to run is governed by federal law. *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001). "The 'standard rule' is that a cause of action accrues 'when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 384 (6th Cir. 2014) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (quotations, citations, and alterations omitted)). "Stated differently, 'in determining when the cause of action accrues in § 1983 cases, we look to the event that should have alerted the typical lay person to protect his or her rights.'" *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) (quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2003)).

Here, the Court finds that Plaintiff's § 1983 claims accrued on October 8, 2019, i.e., the date that Plaintiff was allegedly subjected to the use of excessive force and not provided adequate medical care. On that date, Plaintiff had all the facts that he needed to prosecute his claims against Defendants.

*See Hodge v. City of Elyria*, 126 Fed. Appx. 222, 224 (6th Cir. 2005) (holding that "when asserting a claim under § 1983 for the use of excessive force, the 'injury' occurs on the date of the constitutional injury, the date the allegedly excessive force is used").

Plaintiff then filed his Complaint exactly two years later, on October 8, 2021. Because, however, Plaintiff failed to identify Defendant John Doe Correction Officer No. 1, Plaintiff is barred from amending his Complaint to now add a new party.

At issue is Federal Rule of Civil Procedure 15(c), which provides, in relevant part, as follows:

**(c) Relation Back of Amendments.**

> **(1) When an Amendment Relates Back.** An amendment to a pleading relates back to the date of the original pleading when:
>
> \* \* \*
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> >
> > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

In the Sixth Circuit, courts interpret Rule 15(c)(1)(C) "strictly." *See Brown v. Cuyahoga Cty.*, 517 Fed. Appx. 431, 435 (6th Cir. 2013); *North v. Cty of Cuyahoga*, 2017 WL 3065502, at *8 (N.D. Ohio July 19, 2017). The Sixth Circuit has found that the substitution of a "John Doe" defendant

with a named party is not a "mistake concerning the proper party's identity" for purposes of Rule 15(c)(1)(C)(ii) but is, instead, an addition of a new party. *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 319 (6th Cir. 2010); *see also Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) (holding that substituting a named defendant for a "John Doe" defendant is considered an addition of parties rather than a mere substitution of parties). The term "mistake" as used in Rule 15(c)(1)(C)(ii) means an actual mistake, not an absence of knowledge. *See Brown*, 517 Fed. Appx. at 434-35; *North*, 2017 WL 3065502, at * 8. As the Sixth Circuit has explained, this understanding of the Rule prevents "eleventh-hour lawsuits with placeholder defendants designed to frustrate the operation of a statute of limitations." *Brown*, 517 Fed. Appx. at 435 (citing Cox, 75 F.3d at 240).

Rule 15(c) does not offer a remedy for situations where plaintiffs wait until the last day to file and do not leave any time to identify defendants within the relevant time. *See Smith v. City of Akron*, 476 Fed. Appx. 67, 69 (6th Cir. 2012) ("The Rule allows relation back for the mistaken identification of defendants, not for defendants to be named later through 'John Doe,' 'Unnamed Defendants' or other missing appellations."); *see also Rayfield v. City of Grand Rapids, Mich.*, 768 F. App'x. 495, 502 (6th Cir. 2019).

For example, in *Smith v. City of Akron*, the plaintiff named John and Jane Doe Nos. 1-10 as defendants in his complaint and then, after the statute of limitations had expired, amended his complaint to identify or name two of the defendants. 476 F. App'x at 68-69. The Sixth Circuit concluded that the plaintiff's time to amend his complaint under Rule 15 had expired and the plaintiff could no longer state a claim against the unnamed defendants. *Id.* at 69 ("Because he waited until the last day of the two-year limitations period to file his complaint, that left no time to discover the

identity of his arresting officers within the relevant time."). Accordingly, the court affirmed the dismissal of the complaint against the newly named defendants on statute of limitations grounds.

Thus, Plaintiff's claims against Defendant John Doe Correction Officer No. 1 are time barred and must be dismissed. *See Miller v. Shults*, 2021 WL 2168952, at *6 (E.D. Tenn. May 27, 2021) (dismissing John Doe defendants *sua sponte* when the statute of limitations had run).

### D. Conclusion

Accordingly, and for all the reasons set forth above, Defendants' Partial Motion for Judgment on the Pleadings (Doc. No. 13) is GRANTED. Plaintiff's state law claims and claims against Defendants in their official capacities are hereby DISMISSED. Further, Plaintiff's claims against Defendant John Doe Correction Officer No. 1 are hereby DISMISSED. All that remains are Plaintiff's claims against Defendants White and Beasley in their individual capacities.

**IT IS SO ORDERED.**


Dated: December 22, 2022                    *s/Pamela A. Barker*
                                            PAMELA A. BARKER
                                            U.S. DISTRICT JUDGE